PKA-O-WAH-ASH-KUM *v.* SORIN and others.

*(Circuit Court, N. D. Illinois. 1881.)*

1. INDIANS—THEIR STATUS AS REGARDS OWNERSHIP OF REAL PROPERTY.

A woman of the Pottawatomie tribe of Indians, whose husband has acquired title to lands by a patent from the government, is thereafter subject to the same laws, and, where the rights of third parties are concerned, is liable for the consequences of her acts and non-action, as any other person.

2. SAME—DOWER—LACHES

By the treaty made on the Tippecanoe river, in 1832, the section of land in controversy was granted to an Indian chief of the Pottawatomie tribe, to whom, two years after, the plaintiff was married. In the following year, by a deed in which the woman did not join, the land was deeded away. In 1846 the husband died. The patent from the government was not issued until 1864. Thirteen years after, the widow filed this bill for the assignment of dower in the land. *Held,* that, as against those in possession under the deed of the husband, the bill must be dismissed.

Bill for Dower.

*Walter B. Scates*, for plaintiff.

*Hoyne, Horton & Hoyne, F. W. Young, Leaming & Thompson*, and *Hitchcock, Dupee & Judah*, for defendants.

DRUMMOND, C. J. This was a bill filed on the seventh day of April, 1877, for the assignment of dower in fractional section 7, township 37 N., range 15 E., in Cook county, Illinois. The plaintiff is an Indian woman of the Pottawatomie tribe, at present a resident of Kansas, and claims dower as the wife of Ash-kum, an Indian chief, to whom two sections of land were granted by a treaty made on the Tippecanoe river, on the twenty-seventh of October, 1832, one of which was the section already referred to. By the third article of the treaty, "the United States agreed to grant to each of the following persons the quantity of land annexed to their names, which land shall be conveyed to them by patent." Among the names mentioned is that of Ash-kum, and the quantity annexed to his name is two sections. After describing the list of persons, and the quantity of land agreed to be granted by the United States, the article closes with the following words: "The foregoing reservation shall be selected under the direction of the president of the United States, after the lands shall have been surveyed, and the boundaries to correspond with the public survey." The land was selected under this treaty, and the selection approved by the president in March, 1837. A patent was not issued until November 3, 1864, and then it issued to Ash-kum and his heirs. At the time it issued Ash-kum was dead, but there has been an act of congress, long in force, which declares that a patent issued to a dead person shall take effect as though he were living.

There have been two decisions of the supreme court of the United States, one of which cases went up from this court under this treaty, which have declared what was the nature of the estate taken by Ash-kum under this treaty. *Doe* v. *Wilson*, 23 How. 457; and *Crews* v. *Bursham*, 1 Black, 352. Those cases decided that there was an estate conveyed to the reservee, capable of being transferred by deed, even before the land was selected or surveyed; that when selected and surveyed, and the patent issued, the patent operated so as to transfer by its terms a title to any one to whom the title had been legally conveyed by the original reservee. In *Doe* v. *Wilson* the reservee died before any patent was issued; and, long before the patent had issued, the reservee, during his life, had made a conveyance by general warranty deed of the lands granted to him by the treaty; and the court decided that the person holding the grant

under the reservee acquired a title by the issuing of the patent as against his heirs; and, of course, that the heirs of the reservee, as against the grant of their ancestor, acquired no title whatever, notwithstanding the issuing of the patent to him and his heirs. Substantially the same facts existed in the case of *Crews* v. *Burcham,* where the court made the same ruling.

Ash-kum, on the fourth of October, 1835, made a conveyance of the section in controversy in this case to Louis de Seille by a warranty deed, a certified copy of which, from the recorder's office of Cook county, has been introduced in evidence, it not being in the power of the parties to produce the original deed. Two objections have been made to the introduction of this copy—*First,* that it was not properly acknowledged; and, *secondly,* that there was no certificate of magistracy. According to the copy the deed was acknowledged in Berrien county, Michigan, before a justice of the peace. The official character of the justice of the peace is shown by a certificate of the secretary of state of Michigan, under the seal of the state, attached to the copy, and the certificate of a clerk of a court of record, also attached, showing that the acknowledgment was made in conformity with the law of Michigan at the time the acknowledgment was taken; and, independent of such certificate, I suppose it would be the duty of this court to determine whether or not it was so executed and acknowledged. I think the copy is properly admissible under the twentieth section of the statute relating to conveyances, and therefore that the evidence is that Ash-kum made a conveyance of his right and title to this section of land in 1835, and consequently that when the patent was issued to him and his heirs it conveyed to his grantee and his assigns, under the deed of 1835, all his title to the section, and that his heirs cannot set up any claim to the land as against the deed of their ancestor.

There have been several deeds introduced on the part of the defence to show that the plaintiff has conveyed her interest in the land to different persons who were claiming the land and in possession under the title obtained from Ash-kum, and therefore she cannot now set up any claim for dower. One of these deeds is dated February 19, 1877, by which she conveys, in consideration of the sum of $2,000, with covenants of warranty, to Benjamin S. Sooy, Stutely D. Palmer, James W. Murphy, and D. O. Elwood, the tract of land in controversy, together with the other section reserved to Ash-kum by the treaty; and there is a deed of July 5, 1877, in which the plaintiff purports to convey, for a consideration of $150, all her interest in this

land to Sorin, one of the defendants, making express reference to the bill filed in this case, and authorizing and directing the grantee to cause this bill to be dismissed. These conveyances thus made by the plaintiff are attacked as not having been made by her with full knowledge of the facts; and it is claimed that she was not aware of what she was signing, and therefore that the conveyances are inoperative. The proof shows that she was not able to write nor to speak English; that all communications to her in English had to be made through an interpreter. The proof is of such a character that if the case had to rest upon the validity of these deeds there would be some difficulty in sustaining them, because it does not appear very clearly, although there is a good deal of evidence tending to that conclusion, that she did fully understand the purport and effect of the papers that she signed. I do not, therefore, think it necessary to place the decision of the court in this case upon these deeds, but rather upon other grounds.

The proof seems to show that she was married to Ash-kum by a Catholic priest as early as 1834. There is also proof showing that she and Ash-kum lived together as man and wife after their removal to Kansas, where he died in 1846. Under the law of this state, at the death of her husband she became endowable of his interest in this section of land, she not having been a party to the deed which her husband made in 1835. The agreement to grant had been made by the United States; the land had been located and surveyed, and the boundaries had been established, at the time of the death of her husband. It is true, the patent had not issued, but still her husband, if he had never made any grant of the land, would have been clothed with every right except what might be conveyed by the issue of the patent to him, and she was also clothed with the inchoate right of dower, which became perfect on his death. There has been possession admitted and payment of taxes by several of the defendants, under the grant from Ash-kum, and a general appropriation of the land for more than seven years prior to the filing of this bill. But it is claimed by the counsel of the plaintiff, although he has put in proof to show that the plaintiff was naturalized as a citizen by the district court of the United States, in Kansas, on the thirteenth of October, 1869, that she, being an Indian woman, is not subject to the general rules applicable to ordinary citizens; that she is clothed with special immunities in consequence of her tribal relations, she still being a member of the Pottawatomie tribe of Indians; and consequently all those

laws which are applicable to the cases of possession of land do not reach her case.

There is one expression used in the opinion of the supreme court in *Crews* v. *Burcham,* already referred to, which might, perhaps, throw some doubt upon the question made by the plaintiff in this case. That language is: "It is true that no title to the particular lands in question could vest in the reservee or in his grantee until the location by the president, and *perhaps* the issuing of the patent." It seems to me the doubt implied by the use of this language can hardly be considered as entitled to much consideration in such a case as this, where the defendants claim, not through another and independent title, but through the title granted by the treaty and through the reservee named in the treaty, so that there was nothing to make the title complete in the reservee or his assignee except the mere issuing of the patent. Under our law, for the purpose of asserting a right to the land, an action of ejectment, or of trespass or any other action to enforce a right which existed, was maintainable; and the issue of the patent was the mere consummation of a techical right, and nothing more. It was analogous to the common case under our law of a tract of land purchased of the United States and the money paid, and possession taken by the purchaser, under a receipt of the receiver of the land-office or a certificate of the register, and after this has taken place a patent issues to him. In such case the purchaser has always been considered, even before the issue of the patent, as clothed with all the material rights of ownership to the land. And in the case supposed, where the patent issued to him, no one else can question his prior right. It is only where there is a title independent of his, in which a patent may issue to some third party for the same land, that any question can arise.

Some stress has been laid upon the fact that the plaintiff was ignorant of the tracts of land which had been selected for her husband, and of her husband's rights to this particular property, as well as of the issuing of the patent, until years after his death. I do not think this argument can be considered conclusive as against those who were in the actual possession of the land, holding under a title from her husband himself. It cannot be maintained that after a perfect title to lands exists within this state, by a grant to an Indian, he is exempt, or the land is exempt, from all the ordinary burdens and incidents which the law of the state imposes upon the owners of

lands. He must assert his rights against a trespasser, or a person in possession under the color of title, the same as any other person. The cases which have been cited by the·counsel for the plaintiff, where land belonging to the Indian tribes has been held not to be taxable under the law of the states, have no application to this case. Here the land was severed from the mass of public lands by the grant, the selection of the president, and the issuing of the patent, and the United States could make no claim that the land belonged to an Indian tribe, or to a member of an Indian tribe, as such, and I think the plaintiff has lost, as to the land thus in possession of the defendants, all right to the maintenance of this bill for dower by the delay in the application. More than thirty years elapsed between the death of her husband and the filing of this bill. Thirteen years elapsed between the issuing of the patent and the filing of the bill. During all this time, or the greater part of it, some of this property has been held adversely under a grant from her husband. That in a case of an application for dower, on the part of the widow, in lands held by her husband during coverture, the law of the state on limitations applies, is settled by several cases. *Owen* v. *Peacock*, 38 Ill. 33; *Steele* v. *Gellatly*, 41 Ill. 39; *Whiting* v. *Nichol*, 46 Ill. 230; *Gilbert* v. *Reynolds*, 51 Ill. 513.

The only question, therefore, is whether, because she is a Pottawatomie woman, she is exempt from the operation of the general rules applicable in such cases; and whether any special disability attached to her social and political *status?* I think not, and therefore I shall dismiss the bill as to those defendants thus in possession.

In giving this opinion I do not wish to be understood as deciding that some of the other defences made in this case may not be valid; but I prefer to place the decision on the ground of the laches of the plaintiff. It is difficult, for instance, to believe, in view of her husband's connection with the treaty of Tippecanoe, he himself being one of the signers of that treaty, and the fact that he made a conveyance of this tract of land long before he left Indiana and went to Kansas, this claim was entirely unknown to his wife; but, however that may be, it seems to me that when the title was conveyed by the government she must be placed in the same condition as any other person, and for the consequences of her acts and her non-action, where the rights of third parties are concerned, she has no special immunity.