## PRENTICE *v.* STEARNS.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MINNESOTA.

Submitted January 9, 1885.—Decided March 2, 1885.

In the absence of a bill of exceptions, setting forth evidence, no error can be assigned in respect to facts found by the court when the parties waive a trial by jury.

In a suit at law to recover possession of real estate the court cannot take note of facts, which, in equity, might afford ground for relieving the plaintiff, by reforming the description in his deed.

A deed from an Indian chief to A, in 1856, of a tract described by metes and bounds, and further as "*being the land set off to the Indian Chief 'Buffalo' at the Indian Treaty of September* 30, 1854, *and was afterwards disposed of by said Buffalo to said A, and is now recorded with the government documents,*" does not convey the equitable interest of the chief in another tract described by different metes and bounds, granted to the said chief by a subsequent patent in 1858, in conformity with the said treaty, in such manner that an action at law may be maintained by A or his grantee for recovering possession of the same.

This was an action at law to recover possession of real estate and damages for its detention, the plaintiff in error being plaintiff below, and a citizen of Ohio, the defendant being a citizen of Minnesota.

The real estate in controversy was described in the complaint as an undivided one-half of real estate situated in the county of St. Louis and State of Minnesota, viz.: Lot eighty-two (82) and the east half (E. ½) of lot eighty-four (84), in block two (2), in Duluth proper, 3d division, according to the recorded plat thereof on file in the office of the register of deeds of St. Louis County, State of Minnesota.

The question was upon the plaintiff's title.

The action was tried by the court, the intervention of a jury having been waived by the parties, and the findings of fact and conclusions of law were separately stated.

The facts found were as follows:

1. That the treaty made and concluded on the 30th day of September, A.D. 1854, between the United States and the Chippewa Indians, of Lake Superior and the Mississippi, whereby said Indians ceded to the United States certain territory lying adjacent to the head waters of Lake Superior, contained the following provision, viz.: "And being desirous to provide for some of his connections who have rendered his people important services, it is agreed that Chief Buffalo may select one section of land at such place in the ceded territory as he may see fit, which shall be reserved for that purpose and conveyed by the United States to such person or persons as he may direct."

2. That said treaty was ratified, pursuant to a resolution of the United States Senate passed on the 10th day of January, 1855, by the President of the United States on the 29th day of January, 1855.

3. That the said Chief Buffalo, pursuant to said provision of said treaty, and on the day of the date thereof, to wit, September 30, 1854, by an instrument of writing, executed by him and filed in the office of the United States Commissioner of Indian Affairs at Washington, D. C., selected the land to be conveyed thereunder by the United States, and appointed the persons to whom it was to be conveyed, as follows, viz.: After reciting the foregoing provision of said treaty, ": I hereby select a tract of land one mile square, the exact boundary of which may be defined when the surveys are made, lying on the west shore of

St. Louis Bay, Minnesota Territory, immediately above and adjoining Minnesota Point, and I direct that patents be issued for the same, according to the above-recited provision, to Shaw-Braw-Skung, or Benjamin Armstrong, my adopted son ; to Matthew May-Dway-Gwon, my nephew : to Joseph May-Dway-Gwon and Antoine May-Dway-Gwon, his sons, one-quarter section to each." That the land Buffalo had in view and intended in such designation is not included, nor any part thereof, in the patents subsequently issued by the United States to the relatives of said Buffalo named above, which patents are hereinafter referred to.

4. That said Matthew, Joseph, and Antoine, under date of September 17, 1855, executed and delivered to said Armstrong an instrument assigning to him their right, title, and interest under said appointment and selection of Chief Buffalo.

5. That said Benjamin G. Armstrong and wife, on September 11, 1856, made, executed, acknowledged, and delivered to the plaintiff herein, a deed of conveyance, a copy of which is hereto attached, marked exhibit " B," and made a part of these findings. That a large portion of the land embraced within the courses and distances of said deed is covered by water, and that portion which is not covered by water in said description is land which Chief Buffalo had in view and intended to embrace in his selection as aforesaid, but does not embrace the land involved in this suit.

6. That said deed from Armstrong to plaintiff was duly recorded in the County of St. Louis, Territory of Minnesota, on the 4th day of November, A.D. 1856.

7. That the piece or parcel of land, the title to which is involved in this action, is situated in said County of St. Louis, Territory (now State) of Minnesota.

8. That the said Benjamin G. Armstrong and wife, on the 27th day of August, 1872, executed and delivered to the plaintiff the confirmatory deed, a copy of which is hereto attached and marked exhibit " C," and made a part of these findings, which deed was duly recorded in the County of St. Louis, State of Minnesota, September 2, 1872.

9. That the tract of land which Chief Buffalo had designated

as his selection on the day of the treaty did not correspond with the section lines when the land came to be surveyed into sections, and the United States Land Department decided that the Buffalo designation of the land was too indefinite to enable patents to be issued therefor, and furthermore the land thus designated by Buffalo, was found to be occupied by, and was thereby claimed by certain Indian traders under said treaty, and after a lengthy correspondence and investigation in respect thereto by the Interior and Indian Departments, the, matter was finally adjusted by said relatives withdrawing their claim to the land so designated by Buffalo and consenting to accept other land in lieu thereof to be selected by the Indian Department; whereupon the Commissioner of Indian Affairs by its agent, and by the direction of the said Interior Department, and with the approval of the President, and assent of the said relatives named as aforesaid by said Buffalo, selected certain other lands aggregating 682 acres and situated in four different government sections, as shown by diagram hereto attached and marked exhibit "D," and apportioned the same among said relatives. A copy of the report of the Secretary of the Interior to the President upon the final selection of said land is hereto attached, marked exhibit "E," and made a part of these findings. That on the 23d day of October, 1858, patents for the land so apportioned were duly issued to them by the United States, one of which patents was issued to said Armstrong and a copy of which is hereto attached and marked exhibit "F." That the land involved in this suit is a part of the land embraced in said patent to said Armstrong.

10. That the chief, Buffalo, died in the month of October, 1855, and before the land conveyed by the government to his appointees under said provision of said treaty was finally selected, and without any action on his part under said provision of said treaty subsequent to the appointment of the persons to whom the land was to be conveyed and the conditional selection of the land on the 30th of September, 1854, as aforesaid.

11. That the United States government surveys of the lands ceded by said treaty of September 30, 1854, to the United States had not been made at the date of the said deed from

Armstrong to plaintiff, and were not made until the year following the date thereof.

12. That said Armstrong and wife by warranty deed duly executed and recorded, dated October 22, 1859, conveyed an undivided half of the lands conveyed to him and the other appointees of Chief Buffalo aforesaid, by the United States by said patent of October 23, 1858, to Daniel S. Cash and James H. Kelly.

13. That after said patents were issued to said appointees as aforesaid, the said Matthew, Joseph and Antoine, on March 13, 1859, executed deeds of conveyance of the land which had been so patented to them respectively, to the said Armstrong; which deeds were duly recorded in said St. Louis County, May 17, 1859; and that the said Armstrong and wife, on the 31st day of August, 1864, for a valuable consideration, executed and delivered their deed of conveyance of an undivided half of the land so patented to him and the said Matthew, Joseph, and Antoine, to John M. Gilman, which conveyance was duly recorded in said St. Louis County, September 12, 1864, a copy of which conveyance is hereto attached and marked exhibit " G." That said Gilman took said conveyance without any actual notice of said deed from said Armstrong to the plaintiff of September 11, 1856, or that plaintiff claimed an interest in the land so conveyed to him, said Gilman.

14. That the defendant herein claims title to the piece or parcel of land in controversy as a grantee of said Gilman and under and through said deed to said Gilman of August 31, 1864.

15. That the undivided one-half of the property described in the complaint herein is worth the sum of ten thousand dollars ($10,000).

And the following conclusions of law thereupon:

I. That the appointment of persons to whom the United States were to convey the section of land reserved by the said provision of said treaty, made by the said Chief Buffalo on the 30th day of September, 1854, was a valid and sufficient appointment under said provision, and upon the ratification of said treaty vested in the said Benjamin G. Armstrong and the

other appointees named such an interest as the treaty gave to the land so reserved.

II. That the patent of the United States to Armstrong, and his acceptance of it, is as a valid execution of the treaty on that subject.

III. That the deed from said Armstrong to plaintiff of date of September 11, 1856, is, in its execution, acknowledgment and recording, a valid and sufficient deed and its record is constructive notice of its contents.

IV. That the description in the deed of said Armstrong to plaintiff of September 11, 1856, is insufficient to convey his interest in or title to any other or different tract of land to which he might have been entitled under said treaty than the specific tract described by metes and bounds therein, and that said deed is ineffectual as a conveyance to plaintiff of any interest or title except such as said Armstrong had in or to the land therein particularly described, and that plaintiff thereunder took no title to the land for the possession of which this action is brought.

V. That the quit-claim deed from said Armstrong to said John M. Gilman, of August 31, 1864, conveyed to the said Gilman such interest and no more as said Armstrong had in the land therein described at the date of said deed.

VI. That the plaintiff is not entitled to recover in this action, and judgment is ordered for the defendant for his costs and disbursements.

The body of the deed from Armstrong and wife, dated September 11, 1856, to the plaintiff, was as follows:

" This indenture, made the eleventh day of September, in the year one thousand eight hundred and fifty-six, between Benjamin G. Armstrong and Charlotte Armstrong, wife of said Benjamin G., of the county of La Pointe, State of Wisconsin, of the first part, and Frederick Prentiss, of Toledo, Ohio, of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of eight thousand dollars, to us in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have remised, released and

quit-claimed, and by these presents do remise, release and quit-claim, unto the said party of the second part, and to his heirs and assigns forever, one undivided half of all the following described piece or parcel of land, situate in the county of St. Louis, and Territory of Minnesota, and known and described as follows, to wit: Beginning at a large stone or rock at the head of St. Louis River Bay, nearly adjoining Minnesota Point, commencing at said rock and running east one mile, north one mile, west one mile, south one mile to the place of beginning, and being the land set off to the Indian Chief 'Buffalo,' at the Indian treaty of September 30, A.D. 1854, and was afterwards disposed of by said 'Buffalo' to said Armstrong, and is now recorded with the government documents, together with all and singular the tenements, hereditaments and appurtenances there-unto belonging, or in anywise appertaining; and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; to have and to hold the aforesaid premises, with all the privileges and appurtenances to the said premises belong-ing or appertaining, unto the said party of the second part, his heirs and assigns forever. And also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in, or to, the above described premises, and every part and parcel thereof, with the appurtenances. And the said Arm-strong and his wife, party of the first part, for themselves and their heirs, executors, and administrators, do covenant, prom-ise, and agree to and with the said party of the second part, his heirs, executors, administrators and assigns, that they have not made, done, committed, executed, or suffered any act or acts, thing or things, whatsoever, whereby, or by means whereof, the above described premises, or any part thereof, now are, or at any time hereafter, shall, or may be impeached, charged, or incumbered, in any manner or way whatsoever.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals the day and year first above written."

And the deed of confirmation made by Armstrong and wife to the plaintiff August 29, 1872, was as follows:

" Whereas, on the eleventh day of September, in the year one thousand eight hundred and fifty-six, we, Benjamin G. Armstrong and Charlotte Armstrong, wife of aforesaid Benjamin G. Armstrong, conveyed by a quit-claim deed to Frederick Prentice, of Toledo, Ohio, the undivided one-half part of all our interest in certain lands, situated at or near the head of St. Louis Bay, and intended to describe our interest in what is known as the Chief Buffalo tract at the head of St. Louis Bay, Minnesota Territory, and then believing that the description in said deed would cover, or was the tract that would be patented to us by the United States of America, according to said Buffalo's wishes, and a contract we held from the heirs of said Buffalo. But to definitely fix upon the lands designed to be conveyed, it was stated in said deed to be the land set off to the Indian Chief Buffalo, at the Indian treaty of September thirtieth, in the year one thousand eight hundred fifty-four. And further, I, the said Armstrong, gave a contract on the tenth day of September, in the year one thousand eight hundred and fifty-six, to the said Frederick Prentice, binding ourselves and heirs to give said Frederick Prentice any further writing or instrument he might require.

" And on the first day of July, in the year one thousand eight hundred and fifty-seven, I, Benjamin G. Armstrong and Charlotte Armstrong, agreed to, and did sell to Frederick Prentice the other one-half of said Buffalo tract, for which said Frederick Prentice paid us something over two thousand ($2,000) dollars, and since that time has paid us to our full satisfaction for the whole property. And we agreed to, and by these presents confess payment in full for the whole of the above tract, in compliance of the first deed for the one undivided half, and the carrying out of the contract to sell the balance July first, in the year one thousand eight hundred and fifty-seven. This is intended to cover the land deeded by us to the said Prentice in the deed given on the eleventh day of September, eighteen hundred and fifty-six, and recorded in liber A of deeds, page 106, at Duluth, State of Minnesota, and the land included in the contract of the first of July, eighteen hundred and fifty-seven, and intended to cover the lands as described in

patents from the United States of America to Benjamin G.
Armstrong, Matthew May-Dway-Gon, Joseph May-Dway-Gon
and Antoine May-Dway-Gon, and described as follows: To
Benjamin G. Armstrong the west half of the southwest quar-
ter, and the lot number five (5) of section twenty-seven, and
lot number (3) of section thirty-four, containing together
(182 62-100) one hundred and eighty-two and sixty-two one-
hundredths acres. And to Joseph May-Dway-Gon the south-
east quarter of section twenty-eight, containing one hundred
and sixty acres. And Antoine May-Dway-Gon the east half
of the northeast quarter of section twenty-eight, and the west
half of the northwest quarter of section twenty-seven, contain-
ing one hundred and sixty acres. And to Matthew May-Dway-
Gon the southwest quarter of section twenty-two, containing
one hundred and sixty acres, all of the above being in town
fifty, north of range fourteen, west of the fourth principal
meridian, State of Minnesota, and the three last named pieces
of land have been since deeded by the said Matthew, Joseph
and Antoine May-Dway-Gon to Charlotte Armstrong. But
previous to the date of said deeds the above-named Joseph,
Matthew and Antoine May-Dway-Gon had assigned or trans-
ferred all their right, title and interest therein to the said
Benjamin Armstrong. I, the aforesaid Benjamin G. Arm-
strong, did sell by deed and contract to Frederick Prentice,
which I, the said Charlotte Armstrong, knew at the time, but
did not know but that by getting another deed or conveyance
after the patents were issued, we could sell the property, but
am now satisfied that we had sold and assigned all our right,
title and interest to Frederick Prentice previous to our deeding
to any other person or persons, and that we had no right to
deed or convey to any other person or persons, as the title to
the lands above described was then virtually and by right
vested in the said Frederick Prentice, and that the first deed
for the one-half and the contract for the remaining half of said
land, with the payment thereon made at the time by the said
Frederick Prentice, bound us to give him good and sufficient
deeds to said property whenever so demanded; and we do
hereby assign and quit claim all our right, title and interest

now or at any time held by us to all the above described property, in fulfillment of our agreements with the said Frederick Prentice.

"In witness whereof we have, this 27th day of August, in the year one thousand eight hundred and seventy-two, affixed our hands and seals."

The patent of the United States to Armstrong, which covered the land in controversy, was as follows:

"UNITED STATES OF AMERICA.

"*To all [to] whom these presents shall come, Greeting:*

"Whereas by the sixth clause of the second article of the treaty between the United States of America and the Chippewa Indians, of Lake Superior and the Mississippi, made and concluded at La Pointe, in the State of Wisconsin, on the thirtieth day of September, eighteen hundred and fifty-four, it is stipulated that, 'the Ontonagon band and that subdivision of the La Pointe band of which Buffalo is chief, may each select, on or near the lake shore, four sections of land; under the direction of the President, the boundaries of which shall be defined hereafter; and being desirous to provide for some of his connections who have rendered his people important services, it is agreed that the Chief Buffalo may select one section of land, at such place in the ceded territory as he may see fit, which shall be reserved for that purpose, and conveyed by the United States to such person or persons as he may direct;' and whereas it appears from a return, dated the twenty-seventh day of September, one thousand eight hundred and fifty-eight, from the office of Indian affairs to the General Land Office, that there has been selected and approved for 'Shaw-Bwaw-Skung, or Benjamin G. Armstrong,' as one of the 'connections' of said chief Buffalo, the west half of the southwest quarter, and lot number five, both of section twenty-seven, and lot number three of section thirty-four, containing together one hundred and eighty-two acres and sixty-two hundreths of an acre, all in township fifty north, of range fourteen west of the fourth principal meridian, in the State of Minnesota.

"Now, know ye that the United States of America, in consideration of the premises, and in conformity with the clause of the said treaty, as above recited:

"Have given and granted, and by these presents do give and grant, unto the said 'Shaw-Bwaw-Skung, or Benjamin G. Armstrong,' and to his heirs, the tract of land above described: To have and to hold the said tract, with the appurtenances, unto the said 'Shaw-Bwaw-Skung, or Benjamin G. Armstrong,' and to his heirs and assigns forever.

"In testimony whereof, I, James Buchanan, President of the United States, have caused these letters to be made patent, and the seal of the General Land Office to be hereunto affixed.

"Given under my hand, at the city of Washington, this twenty-third day of October, in the year of our Lord one thousand eight hundred and fifty-eight, and of the Independence of the United States the eighty-third.

"By the President:

[SEAL.]                         "JAMES BUCHANAN,
                         "By T. J. ALBRIGHT, *Sec'y.*
"M. GRANGER,
        "*Recorder of the General Land Office.*
"Recorded Vol. II., pages 376, 377."

*Mr. Benjamin A. Willis* for plaintiff in error.

*Mr. Gordon E. Cole* for defendant in error.

MR. JUSTICE MATTHEWS, after making the foregoing statement, delivered the opinion of the court.

The plaintiff in error has assigned errors, in several particulars, in the finding of facts, but as there is no bill of exceptions setting forth the evidence, no error of law can be assigned in respect to any finding of fact, and we are necessarily restricted to the question whether, upon the facts as found, there was error in giving judgment for defendant.

An argument is also addressed to us by counsel for the plaintiff in error, in support of the proposition, that, if the deed under which he claims title were not effectual to convey the patented land, by reason of a mistaken description, equity would

relieve the plaintiff by reforming the deed. But plainly no such question can arise on this record. The proceeding is not in equity to reform the deed, but is at law to recover posses- sion by virtue of an alleged legal title under it. We are deal- ing with the legal title alone in this action; any equities sup- posed to control it are not the subject of present consideration, and must be excluded altogether from the discussion.

The case of the plaintiff in error rests upon the proposition, maintained in argument by his counsel, that the deed of Arm- strong and wife to him, of September 11, 1856, is capable at law of being construed, and must be construed, as a valid and effectual conveyance—not of the particular tract of land de- scribed by metes and bounds, but—of any and whatever section or tract Armstrong was then equitably entitled to, under the treaty, by virtue of the appointment of Chief Buffalo, to be thereafter specifically designated, and the legal title conveyed by the patent to be issued therefor, which, when issued, would inure to the benefit of the plaintiff in error as the previous and first grantee of Armstrong, and clothe him with the legal title to the land therein described. And in this view it is contended, that the case falls within the rule of the decisions in the cases of *Landes* v. *Brandt*, 10 How. 348; *Doe* v. *Wilson*, 23 How. 457; and *Crews* v. *Burcham*, 1 Black, 352.

In *Doe* v. *Wilson*, as explained and confirmed in *Crews* v. *Burcham*, it was held " that the reservation created an equi- table interest to the land to be selected under the treaty; that it was the subject of sale and conveyance; that Pet-chi-co was competent to convey it; and that his deed, upon the selection of the land and the issue of the patent, operated to vest the title in his grantee."

And in the last-named case—*Crews* v. *Burcham*—the court say :

" We think it quite clear, if this patent had issued to Besion in his lifetime, the title would have inured to his grantee. The deed to Armstrong recites the reservation to the grantee of the half section under the treaty, and that it was to be located by the President after the lands were surveyed; and then, for a valuable consideration, the grantee conveys all his right and

title to the same, with a full convenant of warranty. The land is sufficiently identified to which Besion had the equitable title, which was the subject of the grant, to give operation and effect to this covenant on the issuing of the patent within the meaning of this act of Congress [that is the act of May 20, 1836, 5 Stat. 31]. The act declares the land shall inure to and become vested in the assignee the same as if the patent had issued to the deceased in his lifetime." 1 Black, 357.

In these cases, it will be observed, the land conveyed before the issue of the patent was the same described in and conveyed by the patent, and no question arose, as there does here, as to the identity of the description in the two conveyances. In *Doe* v. *Wilson* the court charged the jury, and correctly, as it was held, that "the description of the land in the deeds from Pet-chi-co to Coquillard and Colerick, from Colerick to Coquillard, and from Coquillard to Wilson, are sufficient to identify the land thereby intended to be conveyed, as the same two sections of land which are in controversy in this suit, and which are described in the patents which have been read in evidence." 23 How. 462.

In the present case, however, the land described in the deed from Armstrong and wife to the plaintiff of September 11, 1856, is not the same land in whole or in part, as that described in the patent from the United States to Armstrong. This want of identity, so far as the description by metes and bounds is concerned, is admitted; but it is insisted that this part of the description may and ought to be rejected from the deed of September 11, 1856, as a matter of construction, on the principle of the maxim, "*Falsa demonstratio non nocet*," and that enough would still be left to identify the land conveyed by the deed to the plaintiff with that described in the patent to Armstrong.

This, however, is not correct. If the alleged erroneous description were stricken from the deed what would remain would be as follows: "One undivided half of all the following described piece or parcel of land situate in the county of St. Louis and Territory of Minnesota," . . . "being the land set off to the Indian chief 'Buffalo' at the Indian treaty of

September 30, A.D. 1854, and was afterwards disposed of by said Buffalo to said Armstrong, and is now recorded with the government documents," &c.

This description, thus remaining, refers to land already at the date of the deed set off to the Indian chief Buffalo, and described in an existing document in the archives of the government, and cannot possibly, therefore, embrace the tract subsequently selected and designated and described in the patent of October 23, 1858. And the references which must be relied on to furnish any description whatever for the land conveyed by the deed, when applied, result simply in restoring to the deed the particular description by boundaries which for imputed error had for purposes of interpretation been struck out.

The case is not one to which the maxim invoked for the construction of the deed can be applied. That rule of interpretation, which rejects erroneous particulars of description, where what is left sufficiently identifies the subject of the grant, is adopted in aid of the intention of the grantor, as gathered from the instrument itself, read in the light of the circumstances in which it was written. But here it is expressly found as a fact by the court, in reference to the land originally selected by Buffalo, and described in the deed from Armstrong to the plaintiff, " that the land Buffalo had in view and intended in such designation is not included, nor any part thereof, in the patents subsequently issued by the United States to the relatives of said Buffalo named above," and " that a large portion of the land embraced within the courses and distances of said deed is covered by water, and that portion which is not covered by water in said description is land which Chief Buffalo had in view and intended to embrace in his selection as aforesaid, but does not embrace the land involved in this suit." So that the description of the land in the deed which it is sought to reject, because it is inconsistent with that of the patent, is an accurate and not an erroneous description of the land intended by the parties to be embraced and conveyed by the deed from Armstrong to the plaintiff.

It follows that there is no error in the judgment of the Circuit Court, and it is accordingly                    *Affirmed.*