McMANUS et al. v. CHOLLAR.

(Circuit Court of Appeals, Fifth Circuit. March 29, 1904.)

No. 1,269.

1. FEDERAL COURTS—JURISDICTION—EQUITABLE DEFENSES—STATE PRACTICE.

Since the federal courts sitting in Texas observe the distinction between legal and equitable rights, an equitable defense cannot be maintained in an action of trespass to try title brought on the law side of a federal court sitting in that state, though under the state statutes equitable defenses are available in such action in the state courts.

2. SAME—DEEDS—CONSTRUCTION—PAROL EVIDENCE.

Where, in trespass to try title, there was no ambiguity in any of the conveyances, except that the common grantor had made absolute deeds to different parties covering the same tract of land, and the words of description were plain and unequivocal, letters written by such grantor to the grantee under the later deed, preliminary to the conveyance to him, were inadmissible to vary or explain the same.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

J. F. Lanier, for plaintiffs in error.

F. D. Minor and Geo. C. Greer, for defendant in error.

Before PARDEE, Circuit Judge, and SPEER and NEWMAN, District Judges.

SPEER, District Judge. This is a writ of error from the Circuit Court of the Eastern District of Texas. The case with relation to which the plaintiffs in error esteem themselves aggrieved is an action of trespass to try title to land. It was brought by Mary R. Chollar against William P. T. McManus and others. Verdict wås directed against the plaintiffs in error, and from this and from certain rulings of the court the writ of error was granted.

The land sued for lies in the county of Hardin, state of Texas, and contains 420 acres. This is described in the plaintiff's petition as "all of that certain 640-acre survey originally granted to James B. Reaves, and described in patent No. 109, volume 12, dated February 12, 1860, from the state of Texas to R. O. W. McManus, save and except that certain two hundred and twenty acres off the south portion of part of said survey, * * * described in the deed from R. O. W. McManus to Caroline A. Parry, dated April 3, 1860." The tract of land sued for is otherwise described as the same embraced in a certain deed from R. O. W. McManus to James W. Danielson, dated August 17, 1877. There was also a claim for damages in behalf of the plaintiff in the court below, the defendant in error here, which were alleged to have been caused by the detention of said land. The damages laid are in the sum of $5,500, and there is an alleged continuing damage of $100 per month.

The plaintiffs in error answered said petition in the Circuit Court by a general demurrer, by general denial, and plea of not guilty, and by alleging that the cause of action, if any, is barred by the statute of limitations.

The statutory remedy by action of trespass to try title is defined by the following provisions of the Revised Statutes of Texas:

"Art. 5248. All fictitious proceedings in the action of ejectment are abolished, and the method of trying titles to lands, tenements, or other real property shall be by action of trespass to try title."

"Art. 5256. The defendant in such action may file only the plea of 'not guilty' of the injuries complained of in the petition filed by the plaintiff against him.

"Art. 5257. Under such plea of 'not guilty' the defendant may give in evidence any lawful defense to the action, except the defense of limitation, which shall be especially plead."

Under these and some other statutes, the prevailing jurisprudence in the state courts of Texas is that an action of trespass to try title can be maintained or defeated on equitable titles (see Hart v. Turner, 2 Tex. 374; Johnson v. Byler, 38 Tex. 606; Mayer v. Ramsey, 46 Tex. 376; Fuller v. Coddington, 74 Tex. 334, 12 S. W. 47); but in the courts of the United States, although sitting in the state of Texas, the distinction between equitable and legal rights, based on constitutional provisions, has always been maintained (Sheirburn v. De Cordova, et al., 24 How. 423, 16 L. Ed. 741; Fenn v. Holme, 21 How. 481, 16 L. Ed. 198; Johnson v. Christian, 128 U. S. 374, 9 Sup. Ct. 87, 32 L. Ed. 412; Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327; Carter v. Ruddy, 166 U. S. 493, 496, 17 Sup. Ct. 640, 41 L. Ed. 1090). Therefore, whenever an action of trespass to try title is brought on the law side of the United States courts, an equitable defense thereto

cannot be maintained, and it follows that the rights of the parties before the court must be determined upon legal as distinguished from equitable principles.

A brief statement of the evidence will indicate how important is the effect of this rule in this case:

The plaintiff in the court below offered a patent dated February 10, 1860, from the state of Texas, granting to R. O. W. McManus, as assignee of James B. Reaves, 640 acres of land in the form of a square; also a deed from R. O. W. McManus to Caroline A. Parry, dated April 3, 1860, conveying 220 acres of the south end of the survey which accompanied the patent of James B. Reaves, and which may be termed the Reaves survey; also a deed dated August 17, 1877, from R. O. W. McManus to James W. Danielson, conveying 420 acres, the same being the south part of said Reaves survey. It will be presently seen that it is under this deed that the plaintiff in the Circuit Court claims title to the land in controversy. She also introduced a copy of the will of James W. Danielson, who it appears died in 1886, and bequeathed all of his estate to her; also evidence showing she had paid the taxes on 420 acres of the Reaves tract since 1887; and also the two letters following, from R. O. W. McManus to J. W. Danielson:

"Moss Bluff, Liberty Co., Texas, July 17—77.

"Major Danielson: I wrote you a letter by Capt. Wreeford who was here on the Schooner Whisper. From what he said you have no use for the boat, and wished to sell her, and as money is so scarce, I made you a proposition to give you 420 acres of land adjoining New Sour Lake, even for the boat. The land was granted to me as assignee of J. R. Reeves, title perfect and all taxes paid, and will give a warrantee deed. The land is all heavily timbered and on or near the railroad survey from Sabine to Dallas. Now, if the exchange suits you, or it does not, let me know at once by sending a postal card. I will give you the patent from the state to me. So you will have the claim of title complete. If you conclude to trade, make out a bill of sale to the boat in due form and acknowledge it before a justice, and send the boat and will make deed and send back by them who come with the boat, or I will come and make out the papers at Harrisburg. Please let me know your conclusion.

"R. O. W. McManus.

"The land is of more value than you set on the boat, but I have more land than I can manage, hence will swap even, as I want a boat just now to go to Sabine for lumber for fencing a pasture for my beeves.

"McM.    Answer at once."

"Moss Bluff, Liberty County, Tex., Aug. 5, '77.

"Mr. J. W. Danielson, Dear Sir: Your postal came and noted. Myself and wife are alone, and it is impossible for me to leave. Now, you say if I will increase the land to 640 you may trade. The 420 acres is really of more value than the boat, but I am 65 years in Dec., and wish to get my land matters closed up, as my children have all left me and will not assist me in paying the taxes. I intend to dispose of them in order to save them the trouble of fighting for them. I have one more small tract of good land and timbered of 213 acres in the same neighborhood, which with 420 acres equals 633 acres, titles perfect and taxes paid to this year, which will be due next Spring. Now, if you will make a bill of sale and in due form before a notary and send the boat to my house, I will make and send you deeds to the two tracts of land duly acknowledged, with the chain of title. I can get a load of ties for her here from M. Haskiel and take to Harrisburg, and the men who brings the boat can run her in that trade a few times, so they will make a little by coming. I am in an out of the way place to get anywhere only by boat, hence I am compelled to have one. Of course I expect the boat to be in good order

and tight, and that you will send everything belonging to her. We are trading on honor more than any other way, as I did not examine the boat when here, was only on deck.

"Yours,                                                    R. O. W. McManus.

"Decide at once, as I may have to go to Waco soon."

It was admitted that R. O. W. McManus died during the year 1883, and that the defendants in the Circuit Court, who are the plaintiffs in error here, are his heirs at law.

After the evidence was submitted the trial judge directed a verdict in the following language: "Gentlemen of the Jury: Under the facts of this case you are instructed to return a verdict for the plaintiff for the land sued for"—and judgment pursuant thereto was accordingly entered.

From this statement it will be apparent that the conflict was the outgrowth of the conditions following: R. O. W. McManus owned all of this land, amounting to 640 acres. It is undeniable that he sold 220 acres off of the south end of said survey to C. A. Parry. Thereafter he also sold to James W. Danielson 420 acres of land, the same being the south part of said survey. The plaintiff in the Circuit Court, claiming under the will of Danielson, maintains that her deed to 420 acres off the south part of said survey must include all of the land which R. O. W. McManus had not sold to Parry. It follows that if this contention is true she is entitled to all of the tract except that to which Parry had title. This would altogether oust the heirs of McManus. The contention of the defendant in error is based upon what is termed by her counsel "an uncertainty as to the identity of the tract of land intended to be conveyed" by the deed from McManus to Danielson. There is, however, no ambiguity in any of the conveyances. The words of description are plain and unequivocal. It is said that the uncertainty arises from extrinsic facts, and that extrinsic evidence is admissible to show this. For this purpose the letters of McManus to Danielson were offered in evidence. There is, however, as stated, nothing ambiguous about these conveyances save the fact that the grantor, R. O. W. McManus, made absolute deeds to different parties, conveying the same tract of land. The deed from McManus to Caroline A. Parry was made many years before that from McManus to Danielson, and conveyed 220 acres off of the south part of the Reaves survey. The subsequent letters of McManus to Danielson, in which he offers to trade 420 acres of land of the Reaves survey for a boat, are, in the first place, incompetent to vary or explain the explicit terms of the conveyance he had previously made to Parry, or that which, with equal explicitness, he had subsequently made to Danielson. But had these letters been admissible, they could not help the defendant in error, for they did not describe or identify the 420 acres to which they related. The evidence that Danielson paid taxes from 1877 to 1886 on 420 acres of land in this survey, if admissible, would be equally indefinite. The question here, in short, is not what R. O. W. McManus intended to convey, but what he actually did convey. In determining this we are restricted to the language of his deed, and since, as we have seen, this is wholly without ambiguity, no extraneous evidence can aid in its construction. This question has been several times be-

fore the Supreme Court of Texas. In the case of White v. Kingsbury, 77 Tex. 614, 14 S. W. 201, that court declares:

"If there was a mistake in the description of the land, this could have been corrected by the grantor at the proper time; or if the appellant's rights were affected by such mistake on the part of the grantor, it could have also been corrected in a proceeding for that purpose, with the proper parties before the court.; but we do not think it competent, in an action like the present, for the defendant to correct the field notes of the plaintiff's deed upon the ground alleged in the answer, and the evidence offered to establish the alleged error in the conveyance to plaintiff we think was probably rejected."

And in Watts v. Howard, 77 Tex. 71, 13 S. W. 966, it is said:

"The deed from Warren to Perkins, through which plaintiff claims, does not convey to the grantee the land in controversy. And it is not competent in an action of trespass to try title to show that it was intended to embrace land not in fact included in the description. If any action had been brought by Perkins against Warren for reformation of the deed, the evidence introduced to show the mistake would have been sufficient to warrant a decree in his favor."

The same principle is adopted by the Supreme Court of the United States in Parker v. Kane, 22 How. 1, 16 L. Ed. 286:

"A deed which conveyed 'an undivided fourth part of the following described parcel or tract of land, viz., lots number one and six, being that part of the northeast quarter lying east of the Milwaukee river,' conveys only lots one and six, and not that part of the northeast quarter which is not included within the lots one and six."

These authorities seem conclusive on this subject.

We, of course, do not undertake to say how effective would be a petition in equity on the part of the defendant in error for the reformation of her deed, for that is not involved in this record. In the case of Prentice v. Stearns, 113 U. S. 445, 5 Sup. Ct. 547, 28 L. Ed. 1059, which was an attempt in a suit at law to recover under one conveyance an equitable interest of the owner in another tract described by different metes and bounds, Mr. Justice Matthews for the court observed:

"An argument is also addressed to us by counsel for the plaintiff in error in support of the proposition that, if the deed under which he claims title were not effectual to convey the patented land, by reason of a mistaken description, equity would relieve the plaintiff by reforming the deed. But plainly no such question can arise on this record. The proceeding is not in equity to reform the deed, but is at law to recover possession by virtue of an alleged legal title under it. We are dealing with the legal title alone in this action; any equities supposed to control it are not the subject of present consideration, and must be excluded altogether from the discussion."

For these reasons we are of the opinion that the admission by the trial judge of extrinsic evidence to aid the court in the construction of the conveyance from R. O. W. McManus to James W. Danielson and the direction of a verdict for the plaintiff were erroneous. The judgment of the court below is accordingly reversed.