OSBORNE *et al. v.* WISCONSIN CENT. R. Co.

*(Circuit Court, W. D. Wisconsin. September 15, 1890.)*

INJUNCTION—MULTIPLICITY OF SUITS.

    The plaintiffs, respectively, are in the possession, and claim to be the owners, of tracts of land acquired by them under the homestead and pre-emption laws of the United States. These lands are all claimed by the Wisconsin Central Railroad Company as part of its place lands as defined by an act of congress passed in 1864. The company has heretofore brought separate actions of ejectment against three of the plaintiffs, and was unsuccessful. Nevertheless, it threatened to bring actions of ejectment against each of the other plaintiffs, as well as actions of trespass for injuries in cutting timber, unless they voluntarily surrendered possession of the lands respectively held by them. The dispute between the railroad company and each of the plaintiffs depends upon precisely the same questions of law, and upon the same facts. The plaintiffs have a common source of title, and the claim of the company is good or bad against all, as it may be good or bad against any one, of the plaintiffs. *Held* that, in order to avoid multiplicity of actions, the issues may be determined in a single suit, in equity, in which the holders of the different tracts may unite as plaintiffs; the case belonging to the class "where

a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others."

In Equity.

Geo. G. Greene and A. W. Weisbrod, for complainants.

Pumey & Sanborn, W. F. Vilas, and George A. Jenks, for defendant.

Before HARLAN, Justice, and BUNN, J.

HARLAN, Justice. For the purpose of aiding in the construction of certain railroads in Wisconsin, among others, a branch extending from a point north of St. Croix river or lake to Bayfield, congress, by an act approved June 3, 1856, granted to that state every alternate section of land, designated by odd numbers, for six sections in width on each side of said roads, respectively, with indemnity limits of 15 miles from the line of each road. 11 St. 20.

The map of definite location of the road to Bayfield was filed July 17, 1858, and was approved by the secretary of the interior.

By the first section of an act of congress approved May 5, 1864, the place limits of the Bayfield branch were enlarged to 10 sections in width of lands on each side, with indemnity limits of 20 miles; and, by the third section of the same act, a distinct grant of the same number of sections, with like indemnity limits, was made to aid in the construction of another road,—the one now owned and operated by the Wisconsin Central Railroad Company, and whose northern terminus is at Ashland, Wis. The sixth section excluded from the operation of the act, except for purposes of right of way, mineral lands, and "any and all lands reserved to the United States by any act of congress, for the purpose of aiding in any object of internal improvement, or in any manner for any purpose whatever." 13 St. 66.

When the act of 1864 was passed, there were in force certain orders of the land department, withdrawing from sale or location, for any purpose whatever, all the lands within the original 15-mile indemnity limits of the Bayfield road, as defined by the act of 1856. These orders were made after the map of definite location of that road had been filed and approved, and to the end that deficiencies ascertained in its place limits, as originally defined, might be supplied from such indemnity lands.

What was done by the state, by the land department, and by railroad companies, under or in execution of the acts of 1856 and 1864, is fully stated in the opinion just filed in the case in ejectment of *Railroad Co. v. Forsythe, post,* 867.

The respective plaintiffs in the present suit claim to own, and are in possession of, tracts of land, each one of which is within the original 15-mile indemnity limits of the Bayfield road, and also within the place limits of the Wisconsin Central road, as defined by the third section of the act of 1864; in other words, the original indemnity limits of the Bayfield road, and the place limits of the Wisconsin Central Railroad, overlap each other as to the lands in dispute. These lands were recently

held by the land department to be open to entry under the homestead and pre-emption laws of the United States, and, with its permission, were entered by the plaintiffs.

The Wisconsin Central Railroad Company construes the act of 1864 as granting all the lands within the place limits of its road. It claims that such part of those lands as fell within the original indemnity limits of the Bayfield road, and were, prior to 1864, withdrawn by the secretary of the interior from sale or location, were not, by reason of such withdrawal, and within the meaning of the sixth section of the act of 1864, "reserved to the United States;" and, having obtained patents from the state, it brought separate actions of ejectment against W. O. Forsythe, L. W. Lentz, and E. A. Bekken, three of the plaintiffs in the present suit. In these three actions, the court has decided that the law was for the defendants, and has set aside the verdicts rendered therein for the company. The bill in the present suit alleges that the company threatens to bring actions of ejectment against each of the other plaintiffs, and also actions of trespass against all the plaintiffs for injuries in cutting timber, unless they voluntarily surrender possession of the lands respectively held by them.

The issues between the railroad company and each of the plaintiffs depend upon precisely the same questions of law and upon the same facts. The relief asked is that these issues may be determined in a single action, and that the railroad company be enjoined from prosecuting the actions of ejectment already brought, or any action of ejectment for the recovery of said lands, or any action of trespass in respect thereto.

The demurrer to the bill presents the question whether the case is one justifying the intervention of a court of equity, or whether the question of title to each tract—all the tracts being within a larger boundary, and the whole being claimed by the railroad company as a part of its place lands under the act of 1864—must be determined in separate actions of ejectment against the respective plaintiffs.

We are of the opinion that the objection to the bill is not well taken. Were the lands held by the plaintiffs granted by the act of congress of 1864 for the benefit of the road named in its third section, or were they, when that act was passed, by reason of their having been previously withdrawn from sale or location, "reserved to the United States," and therefore, within the meaning of the sixth section, excluded from the grant made by the third section? If, when the act of 1864 was passed, they were "reserved to the United States," the law is for each of the plaintiffs. While the plaintiffs have separate and distinct interests because of their respective claims of ownership of separate and distinct tracts of land, they have a community of interest in the subject-matter of the controversy relating to these lands, and a common source of title, namely, the action of the land department opening these lands for entry under the homestead and pre-emption laws of the United States. They have thus a community of interest in the questions of law and fact upon which the issue between the railroad company and each plaintiff depends. The company's claim is good or bad against all the plaintiffs,

as it may be good or bad against any one of them; and yet a judgment in favor of one, in an action of ejectment brought by the company, would not avail the others in separate actions of ejectment against them. The case is peculiarly one in which the jurisdiction of a court of equity may be invoked in order to avoid a multiplicity of suits. It belongs to the class "where a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone." 1 Pom. Eq. Jur. §§ 245, 255, 257, 268, 269, 273, and authorities cited in notes to these sections. *Crews* v. *Burcham*, 1 Black, 352, 357. In such cases the plaintiffs are united by a common tie, created by identity of interest in the decision of the same questions of law and of fact, and have a common adversary. The fact that the several tracts of land here in dispute were entered at different dates, and by different persons, is of no consequence, as the validity of each entry, as against the railroad company, depends upon precisely the same questions of law and fact.

Upon the merits, as disclosed by the bill, the case is within the decision just rendered in *Railroad Co.* v. *Forsythe, post*, 867.

The demurrer is overruled, and the defendant will answer. Let an injunction issue as prayed for.

BUNN, J., concurring.