**ALLIANCE INS. CO. OF PHILADELPHIA et al. v. JAMERSON.**

**No. 806.**

District Court, E. D. Illinois.

Dec. 7, 1935.

Baker & Lesemann, of East St. Louis, Ill., Taylor, Chasnoff & Willson, of St. Louis, Mo., and Martin F. Oehmke, of East St. Louis, Ill., for plaintiff.

Kramer, Campbell, Costello & Wiechert, of East St. Louis, Ill., for defendant.

LINDLEY, District Judge.

Ten fire insurance companies have filed their bill of complaint against defendant, alleging that they are the insurers in eleven different policies upon a stock of merchandise in East St. Louis, Ill., destroyed by fire; that defendant is the insured in each and all of the said policies; that one of the provisions of each of the allegedly standard insurance contracts is that the insurer shall not be liable for any more than its pro rata share of any total loss; that defendant has instituted in the state court ten different suits at law upon the policies; that, although certain of the latter purport to constitute prima facie and individual liability of more than $3,000, each of the suits was brought for $2,999; that none of the plaintiffs is liable because the defendant fraudulently conspired with others to procure by false statements the insurance, to bring about the fire and resulting destruction of the insured property, all with the purpose of defrauding plaintiffs; that defendant has been convicted on an indictment in the United States court charging him with using the mails to promote this fraudulent scheme; that equity has jurisdiction, first, because of the provisions of the policies aforesaid; and, second, because the trial of this suit will avoid multiplicity of suits.

Plaintiffs pray for a permanent injunction against the prosecution of the suits in the state court, for cancellation of the policies, or, in the absence of such relief, determination of the liability of each of the insurers in accordance with the provisions hereinbefore mentioned. Defendant resists the application for injunction, and has filed his motion to dismiss the bill for want of jurisdiction or equity.

■ The first question is as to whether a federal court has any jurisdiction. Diversity of citizenship exists; defendant is a resident of Illinois, and each of the plaintiffs is resident of a state other than Illinois. Plaintiffs claim the amount involved is the aggregate of the alleged liabilities. Defendant denies that plaintiffs have any right to unite in a joint bill of complaint and that there is, therefore, lack of jurisdictional amount.

In Troy Bank v. G. A. Whitehead & Co., 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81,

the Supreme Court said: "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest."

The question of whether an insured may, in a similar situation, unite as defendants various companies in a suit in equity, is settled in this jurisdiction. In American Central Ins. Co. v. Harmon Knitting Mills, 39 F.(2d) 21, 23, the United States Circuit Court of Appeals for the Seventh Circuit had before it a bill in equity brought by the insured against seven companies, the separate policy of each of which provided that there should be no liability for any greater proportion of the loss than the amount the policy bore to the entire insurance. The court approved the jurisdiction, saying: "If equity has jurisdiction of this cause, it is because it will avoid numerous actions at law. But something more is required than the avoidance of a multiplicity of suits. There must be a common interest existing among the individual defendants and between them and the plaintiff in order that a court of equity may interfere. * * * This common interest exists in the present suit, if at all, because of the similar provisions in all of the insurance policies and particularly because of that provision heretofore quoted which makes each appellant liable for only its proportion of the total loss. Is this common interest of such a nature, extent, and object, as to justify the assumption of jurisdiction by a court of equity? We think it is. Milwaukee Mechanics' Ins. Co. v. Ciaccio (C.C.A.) 38 F. (2d) 153. All the defendants were interested in the loss, the determination of which constituted what might be called the gist of this suit. It is true, each cause of action is based upon a contract, but liability is measured by the insured's loss rather than by the amount of the policy. In fact, liability under the contract is dependent upon the amount of all the outstanding insurance as well as the amount of the loss. How is the amount of outstanding insurance to be determined? And how can one company's proportion be ascertained without first ascertaining the total amount of insurance."

To the same effect is Milwaukee Mechanics' Ins. Co. v. Ciaccio (C.C.A.) 38 F. (2d) 153.

With this doctrine the Supreme Court of Illinois agrees. Thus, in Weininger v. Metropolitan Fire Ins. Co., 359 Ill. 584, 195 N.E. 420, 422, 98 A.L.R. 169, where a similar suit in equity had been brought upon nineteen fire insurance policies to determine the pro rata liability of each of the companies, the court, after remarking that the question was one of first impression in the state court, approved the jurisdiction. Mr. Justice Herrick said: "In the case at bar we have the common right in the complainants against the defendants, the establishment of which would regularly require the bringing of at least sixteen separate law actions. No defendant here has a defense which is personal to it, alone, but the defenses are common to all the defendants. If liable, each is liable for the payment of loss under the same conditions as the others. The record contains over 5,200 pages. While the cost of litigation is not the only criterion, yet in determining whether the defendants are subjected to any hardship by having the issues here tried in equity, the question of expense to the litigants and the time of the court in settling the issues are factors that may properly be considered by the court. If the issues were submitted to sixteen different juries, it is possible that the findings would be varied and conflicting and for different amounts of liability. In fact, it would be possible that in some cases juries might return verdicts for the defendants and in others for the complainants. That there might be very honest differences as to the amount of recovery is demonstrated by the record itself. * * * Certainly the case would be very much complicated in arriving at the amount of loss which each company should bear by reason of the pro rata provision of the policies if the several juries deciding the cases should determine the loss at different amounts. The liabilities of the defendants here by reason of the controverted issues as to the amount of loss and the pro rata features of the policies are interrelated and interdependent. There is involved herein, therefore, not only the question of multiplicity of suits, but, if there is a recovery by the complainants, the further fact that when the loss is determined some sort of accounting is necessarily required to fix and prorate the amounts for which the defendants are severally liable. We conclude that the case here presented is a proper one for the assumption of jurisdiction by a court of equity, not only upon the ground of avoiding a multiplicity

of suits but also because an accounting is likewise involved."

The logic of these opinions applies to the present case. Upon principle, it matters not whether the insurance companies are plaintiffs or defendants. In the cases cited in both the federal and state courts the insurers disputed equitable jurisdiction. The courts held against them. Bowing to the rule thus established, plaintiff companies now invoke the jurisdiction in equity upon policies similar to those before the courts in the cases mentioned. They have a common defense and the same right in equity discussed by both federal and state courts; namely, the right to have determined their pro rata shares of the total loss if any, in the nature of an accounting in equity. Ignoring the question of fraud, the gist of the action, as Judge Evans said (American Central Ins. Co. v. Harmon Knitting Mills, supra), is the determination of the amount of the loss and the pro rata share of each of plaintiffs therein. If, in addition and as a first alternative, plaintiffs insist that this gist of the action has been destroyed by the fraud of defendant, still the amount in controversy is measured by the same element, the total loss claimed by defendant. He is either entitled to recovery for the full amount, clearly in excess of $3,000, or nothing. Having a right to sue in equity to recover this amount, no reason appears why those who are said to be liable may not sue likewise in the same court of equity. In other words, a cause in equity existing, either party may invoke the court's jurisdiction.

Other courts have held that several actions commenced or threatened by the same plaintiff against different insurance companies which had issued policies on plaintiff's property and refused to pay losses thereunder constitute a multiplicity of suits, within the meaning of the law, authorizing the interference of equity, where the same defense is set up by each of the defendants; and that an injunction will be granted to restrain the prosecution and commencement of such actions, upon a bill in the nature of a bill of peace, filed by all the companies against plaintiff in such actions. Virginia-Carolina Chemical Co. v. Home Ins. Co., 113 F. 1, 51 C.C.A. 21; Fegelson v. Niagara F. Ins. Co., 94 Minn. 486, 103 N.W. 495; Tisdale v. Insurance Co. of North America, 84 Miss. 709, 36 So. 568; Dixie F. Ins. Co. v. American Confectionery Co., 124 Tenn. 247, 136 S.W. 915, 34 L.R.A.(N. S.) 897.

In Dixie Fire Insurance Company et al. v. American Confectionery Company, 124 Tenn. 247, 136 S.W. 915, 926, 34 L.R.A. (N.S.) 897, the court said: "It is perceived at a glance that the five contracts of insurance upon which the nine suits complained of might be brought, all cover property which was destroyed or injured by the fire which occurred at the plant of the Confectionery Company. The liability under each policy springs from that loss. Each company is interested in the ascertainment of the loss, and in fixing the amount thereof, since each is liable for the loss only in the proportion which the amount of each policy bears to the whole amount of insurance. There could be brought at law certainly five suits, one on each policy. Why should there be five different valuations of five separate juries on the same evidence, when one trial before the court of chancery, or in that court before a jury, would settle the question with very much less labor and expense to the parties, and with very much less expenditure of the public time and public money in affording the parties the facilities of a trial?"

In Wyman v. Bowman (C.C.A.) 127 F. 257, at page 263, the court said:

"This court has repeatedly held—and that holding is sustained by the great weight of authority—that a bill in equity against several defendants separately liable either at law or in equity may be maintained, in order to avoid a multiplicity of actions at law or of suits in equity, whenever there is a common and decisive point of litigation between the complainant and the defendants, the complainant has no remedy at law as prompt, practical, and efficient to attain the ends of justice as the suit in equity, and the convenience of the complainant in pursuing the single suit in equity is not overcome by the deeper inconvenience of such a course to the defendants. [Citing cases.] In the suit under consideration, every point of litigation between complainant and the defendants is common to all the latter. * * * Why does not this suit prevent a multiplicity of actions at law, and give to the complainant a more efficient and practical remedy, without inconvenience to the defendants, than nine separate actions at law could give. The remedy at law which will preclude the maintenance of a suit in equity must be 'plain and adequate, or, in other words, as practical and efficient to the ends

of justice and its prompt administration as the remedy in equity.' [Citing cases.]

"Would nine actions at law, in which the same questions of law and fact would be tried nine times upon the production and reproduction of the same evidence before nine different juries, be as efficient and prompt or as practical a means to determine the questions here at issue, and to attain the ends of justice, as this single suit in equity? The question is its own answer. Is there any deeper inconvenience to the defendants than would be compensated for by the convenience of the plaintiff in pursuing this remedy? None is proved; none can be conceived. Indeed, the single suit in equity entails less expense, less labor, and less trouble upon the defendants by as much as it is less expensive and troublesome to try a single suit in equity than it is to try nine actions at law, involving the same controversies, conditioned by the same evidence. The defendants have a common interest in every material question of law or of fact involved in the controversy in this suit. The remedy of the complainant by this proceeding in equity is far more efficient, prompt, and practical to attain the ends of justice, and much less expensive and inconvenient to all the parties to the controversies, than nine actions at law would be."

In Virginia-Carolina Chemical Co. v. Home Ins. Co. (C.C.A.) 113 F. 1, 5, affirming (C.C.) 109 F. 681, the court said: "If it appears from the face of the bill that the defendants have the same defense, arising from a common interest in the matter of litigation, and that by one comprehensive suit in equity all the rights and interest of the defendants can be determined as between them and the Virginia-Carolina Chemical Company, then a bill in equity can be maintained. [Citing cases.] * * * It appears from the face of the bill that there are 14 different actions brought by the Virginia-Carolina Chemical Company against these defendants. Equity has jurisdiction to prevent a multiplicity of suits, and to protect the defendants from unnecessary expense, though the Virginia-Carolina Company, so far as it is concerned, has an adequate remedy at law. The question presented by the demurrer in this case is whether or not all the defendants can be joined in one suit. This bill upon its face alleges that the defendants have a common interest in the questions involved, though their liability may be different. If it appeared from the face of the bill that

there was not a common interest in the subject of litigation, and that there was no connection the one with the other, then the exception taken to the bill should be sustained. But, as we have seen, all the defendant insurance companies have a common interest in defeating the claims of one party, the plaintiff in the actions at law. On one side is the Virginia-Carolina Chemical Company, the plaintiff in the actions at law, while on the other side are the 14 insurance companies, who deny their liability to the Virginia-Carolina Chemical Company upon their policies of insurance."

As to enjoining the suit which was not removable, because it involved less than $2,000, the court said: "The twelfth paragraph of the bill alleges that by the terms of each of the insurance policies issued by the various companies upon the property described it was provided no company shall be liable under its policy for a greater proportion of any loss on the described property than the amount insured by each policy should bear to the whole insurance. This allegation of the bill, upon a demurrer to it, must be admitted as true; and, if true, it establishes such a relation between the 16 companies that insured this property as creates a liability, if the policies are valid, which can be better and more readily ascertained by a reference to a master to fix. For this reason it was proper that the London Assurance Corporation should be made a defendant to this bill, not only that the plaintiffs in this action, but all of the insurance companies who insured this property, should be protected in their rights from unjust and vexatious suits at law. It is a well-recognized principle in equity that a court of equity will entertain jurisdiction to prevent an unjust and unfair use of a resort to a court at law by a party which would deprive other parties of their just rights or subject them to vexatious suits."

This suit was distinguished in the later case, Rochester German Ins. Co. of Rochester, N. Y., et al. v. Schmidt (C.C.A.) 175 F. 720. Four lawsuits were there involved; two were removed and two were not. The asserted ground for equity jurisdiction was that the insurance was proportionate. The court refused to take jurisdiction. It did not overrule Virginia-Carolina Chemical Co. v. Home Ins. Co. (C.C.A.) 113 F. 1, but pointed out that in that case the insurance companies had a common defense, namely, that the insurance had been obtained by fraud, whereas the ground for jurisdiction in the case then

being considered was that the liability of the companies could be ascertained only in an equity hearing. To this the court did not accede. Thus it will be seen that that court did not agree with the settled law of this circuit and this state, viz., that equity has jurisdiction of a suit to determine the proportionate liabilities of the various insurers. Had the law been settled thus in that circuit as it is in this, I apprehend the court would have been compelled to take jurisdiction. If in every jurisdiction the law were settled as it is here as to jurisdiction in equity, I believe each case relied upon by defendant in this connection would necessarily have been decided differently. See, also, Pomeroy's Equity Jurisprudence, vol. 1 (4th Ed.) 432, § 255; page 457, § 261; footnotes on pages 458, 459, and 460; American Cent. Ins. Co. v. Landau, 56 N. J.Eq. 513, 39 A. 400, opinion by Chancellor Pitney, afterwards on the Supreme Court of the United States; and Tisdale v. Insurance Co. of North America, 84 Miss. 709, 36 So. 568; Dows v. Chicago, 11 Wall. 108, 20 L.Ed. 65; New York, etc., R. Co. v. Schuyler, 17 N.Y. 592; 21 C.J. 308, 309; Rader v. Bristol Land Co., 94 Va. 766, 27 S.E. 590; Kelley v. Boettcher, 85 F. 55, 29 C.C.A. 14; Hamilton v. American Hulled Bean Co., 143 Mich. 277, 106 N.W. 731; Bradley v. Bradley, 165 N.Y. 183, 58 N.E. 887, affirming 53 App.Div. 29, 65 N.Y.S. 514; Smith v. Schulting, 14 Hun (N.Y.) 52; Rader v. Bristol Land Co., 94 Va. 766, 27 S.E. 590; Bosher v. Richmond, etc., Land Co., 89 Va. 455, 16 S.E. 360, 37 Am. St.Rep. 879.

The rule accords in spirit with Equity Rule 37, 28 U.S.C.A. following section 723, which provides that "all persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs," and which, it has been pointed out, is merely declaratory of the previous settled general practice. Tully v. Triangle Film Corporation (D.C.) 229 F. 297; Little v. Tanner (D.C.) 208 F. 605, reversed on other grounds 240 U.S. 369, 36 S.Ct. 379, 60 L.Ed. 691; Gaumont Co. v. Hatch (D. C.) 208 F. 378.

In Liverpool, etc., Ins. Co. v. Clunie et al. (C.C.) 88 F. 160, 167, the court said: "A court of equity will, in a single suit, take cognizance of a controversy, determine the rights of all the parties, and grant the relief requisite to meet the ends of justice in order to prevent a multiplicity of suits, where a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter may be settled in one action brought by all these persons uniting as co-plaintiffs."

In Osborne et al. v. Wisconsin Cent. R. Co. (C.C.) 43 F. 824, 826, Justice Harlan, sitting in circuit, held that the court had jurisdiction in equity of a suit in behalf of various claimants of land. The several tracts had been entered at different dates by different persons, but the titles depended upon the same questions in law and fact. Plaintiffs sought to restrain a railroad company from prosecuting suits against the plaintiffs. Justice Harlan said: "The company's claim is good or bad against all the plaintiffs, as it may be good or bad against any one of them; and yet a judgment in favor of one, in an action of ejectment brought by the company, would not avail the others in separate actions of ejectment against them. The case is peculiarly one in which the jurisdiction of a court of equity may be invoked in order to avoid a multiplicity of suits. It belongs to the class 'where a number of persons have separate and individual claims and rights of action against the same party, but all arise from some common cause, are governed by the same legal rule, and involve similar facts, and the whole matter might be settled in a single suit brought by all these persons uniting as co-plaintiffs, or one of the persons suing on behalf of the others, or even by one person suing for himself alone.' 1 Pom.Eq.Jur. §§ 245, 255, 257, 268, 269, 273, and authorities cited in notes to these sections. Crews v. Burcham, 1 Black, 352, 357 [17 L.Ed. 91]. In such cases the plaintiffs are united by a common tie, created by identity of interest in the decision of the same questions of law and of fact, and have a common adversary. The fact that the several tracts of land here in dispute were entered at different dates, and by different persons, is of no consequence, as the validity of each entry, as against the railroad company, depends upon precisely the same questions of law and fact."

See further in this connection Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, pp. 431, 434, 435, 457, 458, 479, 498, 500, and 21 C.J. 72, 73, 74.

As to the contention that the suits at law may not be restrained, it should be observed that, where circumstances exist which justify a court of equity, which has

properly acquired jurisdiction, in retaining it, such course may be followed, although an action at law is pending where the legal rights might be determined; and this whether such action was instituted after or before the jurisdiction of equity attached. 21 C.J. 149; Lockett v. Hurt, 57 Ala. 198; Bivins v. Marvin, 96 Ga. 268, 22 S.E. 923; Keighler v. Ward, 8 Md. 254.

This power is of long-settled standing, and rests on the clear authority vested in courts of equity over persons within their jurisdiction. Such stay operates only in restraint of the parties, and is in no prohibition upon the action of the legal tribunal itself. The court of equity asserts no supremacy over a court of law, but virtually admits and assumes the jurisdiction of the latter. 32 C.J. 84. Thus in Chapman v. American Surety Co., 261 Ill. 594, 104 N. E. 247, 250, the court said: "The use of injunctions to stay actions at law was substantially coeval with the establishment of chancery jurisdiction. That jurisdiction was largely built up through the instrumentality of injunctions in restraining the prosecution of legal actions where the aid of chancery was sought because the equities of the case could not be considered in the common-law action. In the exercise of this jurisdiction courts of equity assert no supremacy over courts of law. The injunction virtually admits and assumes their jurisdiction. It is addressed to the litigant parties, prohibiting them from resorting to legal jurisdiction because the controversies involve equitable features which can only be fully and finally determined in a tribunal having equitable jurisdiction."

The court added that the bill for injunction may be entertained before the commencement of a suit at law or pending such suit.

The general principle underlying the decisions is well stated by the New Jersey equity court in Lehigh Valley R. Co. v. McFarlan, 31 N.J.Eq. 730, 754, as follows: "The object to be attained by resort to a court of equity, in such cases, is, to obtain a final determination of the particular right in controversy, as between all the parties concerned, by a single issue, instead of leaving the right open to litigation by separate suits."

See Pomeroy's Equity Jurisdiction (4th Ed.) vol. 1, pp. 179, 238, 242.

The doctrine abides in the federal jurisdiction, and a federal court of equity may restrain other suits at law in the federal court. Commercial Acetylene Co. v. Avery Portable Lighting Co. (C.C.A.) 159 F. 935; Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065.

However, even though it be conceded that courts have jurisdiction in equity, which, incidentally to the main relief prayed for, may justify an injunction against actions at law, there arises the further question as to whether a federal court, having jurisdiction in equity, may restrain pending suits in the state court, in view of section 379, title 28 U.S.C.A., as follows: "The writ of injunction shall not be granted by any court, of the United States to stay proceedings in any court of a State."

This statute has been the subject of much discussion, but it seems settled that it was the intent of Congress thereby not to affix a limitation upon the jurisdiction of the court, but merely to limit the general equity powers of the court in the granting of a particular form of equitable relief. In other words, the statute looks to the equity of the bill, and its effect is to provide that no equity jurisdiction shall exist in the United States courts which has for its basis for existence the enjoining of suits in the state court, but that, on the other hand, the well-recognized equity jurisdiction to restrain suits at law, in protection of the jurisdiction of a court of equity, is not limited by the act, and that it recognizes the well-established general doctrine above discussed. Thus in Smith v. Apple, 264 U.S. 274, at page 279, 44 S.Ct. 311, 313, 68 L.Ed. 678, the court said: "So the question whether, in a suit in equity, the plaintiff is prevented by Section 265 of the Judicial Code [28 U.S.C.A. § 379] from obtaining an injunction staying proceedings in a State court, does not present an issue as to 'the jurisdiction' of the District Court. This Section—re-enacting Section 720 of the Revised Statutes—provides that, except in bankruptcy cases, the 'writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State.' It is not a jurisdictional statute. It neither confers jurisdiction upon the District Courts nor takes away the jurisdiction otherwise specifically conferred upon them by the Federal Statutes. It merely limits their general equity powers in respect to the granting of a particular form of equitable relief; that is, it prevents them from granting relief by way of injunction in the cases included within its inhibitions. In short, it goes

merely to the question of equity in the particular bill."

In the later case of Woodmen of the World v. O'Neill et al., 266 U.S. 292, 45 S.Ct. 49, 51, 69 L.Ed. 293, the Supreme Court sustained the jurisdiction in equity to restrain pending suits at law in the state court, in order to protect the equity jurisdiction of the court, in a suit involving equity, and there said: "The jurisdiction thus acquired was not taken away by Section 265 of the Judicial Code, providing that, except in bankruptcy cases, 'the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state.' This section does not deprive a district court of the jurisdiction otherwise conferred by the federal statutes, but merely goes to the question of equity in the particular bill; making it the duty of the court, in the exercise of its jurisdiction, to determine whether the specific case presented is one in which relief by injunction is prohibited by this section or may nevertheless be granted."

This doctrine was expounded at length with many citations in Wells, Fargo & Co. v. Taylor, 254 U.S. 175, at pages 182 to 188, 41 S.Ct. 93, 65 L.Ed. 205. See, also, Munroe, Receiver, v. Raphael, 288 U.S. 485, 53 S.Ct. 424, 77 L.Ed. 910; Mississippi Valley Trust Co. v. Franz (C.C.A.) 51 F.(2d) 1047; Brown et al. v. Pacific Mut. Life Ins. Co. (C.C.A.) 62 F.(2d) 711.

The true statement seems to be that, while by the act a limitation upon equitable jurisdiction is created, this statutory prohibition does not prevent the federal court from enjoining the maintenance or institution of suits in the state court which would interfere with or frustrate equity jurisdiction, if such is presented by the bill.

We find that the present case presents a proper bill, within the cognizance of a court of equity, because, first of all, it involves the determination of pro rata liabilities, a subject-matter which the Court of Appeals has said is within equity jurisdiction, and, second, it prevents a multiplicity of suits. Being a proper suit in equity, therefore, in the United States court, and its object being to cancel the policies of insurance or, in the alternative, to determine the pro rata shares for which the plaintiffs may be liable, the court may preserve and protect the equity jurisdiction and enjoin proceedings at law. This, it seems to me, is the necessary corollary of the Supreme Court's pronouncements in the cases mentioned.

It is asserted, however, that plaintiffs are without right to relief in equity, for the reason that there is an adequate remedy at law. It would seem that the decisions of the Court of Appeals and the Supreme Court of Illinois above quoted, discussing the remedy in equity, adequately dispose of this question. They point out that in the various suits at law different juries might find different losses. The pro rata share of the insurers, therefore, would vary according to the verdicts of the different juries. Consequently the remedy in equity in one court where the total loss and the share of each can be established is a more adequate remedy. In Wyman et al. v. Bowman, supra, the court points out that in such cases the plaintiff has no remedy at law as prompt, practical, and efficient to attain the end as a suit in equity, and that the convenience of the plaintiff in procuring the suit in equity is not overcome by any greater inconvenience to defendant. The court said that the remedy is more efficient and practical, pointing out the remedy at law which will preclude the maintenance of a suit in equity must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and as prompt as the remedy in equity. See Pomeroy's Equity Jurisprudence, vol. 1 (4th Ed.) 334.

It is said that to take jurisdiction of the present case would deprive the defendant of his right to a jury trial. It is sufficient answer that the right to a jury trial does not abide in suits at equity; in other words, if a proper equity suit is instituted, there is no constitutional provision guaranteeing to the parties a jury trial. Furthermore, a court of equity has power to submit issues of fact to a jury, but whether it shall do so rests in its discretion. 21 C.J. 585; Pacific Coal & Transportation Co. v. Pioneer Min. Co., 205 F. 577, 123 C.C.A. 593; Nashville R., etc., Co. v. Bunn, 168 F. 862, 94 C.C.A. 274; Herdsman v. Lewis (C.C.) 9 F. 853, 20 Blatchf. 266; Ely v. Monson, etc., Mfg. Co., 8 Fed.Cas. page 604, No. 4,431: Goodyear v. Providence Rubber Co., 10 Fed.Cas. page 712, No. 5,583, 2 Cliff. 351, affirmed 9 Wall. 788, 19 L.Ed. 566.

It is asserted that the decision of the Supreme Court in Di Giovanni et al. v. Camden Fire Insurance Association, 56 S. Ct. 1, 6, 80 L.Ed. ——, November 11, 1935, is decisive against plaintiffs' right to main-

tain this suit. I do not so construe the decision. Rather its effect is that the necessity of defending two suits in the state court is not sufficient to justify taking jurisdiction merely to prevent multiplicity of suits. The court does not attempt to say what number will produce a multiplicity of suits, but announces that the question is always one of discretion, and concluded that the "threatened injury to respondent is of too slight moment to justify a federal court of equity, in the exercise of its discretion" to take jurisdiction, in order to prevent multiplicity of suits. Obviously, no arbitrary rule can be laid down as to what will constitute multiplicity. It is conceivable that two suits at law might entail such expense and inconvenience as to invoke the doctrine. As the Supreme Court pointed out, the question is to be decided upon the particular facts of each case. The difficulties here pointed out did not exist in the Di Giovanni Case, that is, the determination of the pro rata liabilities, in case there is any liability. Here there are ten lawsuits requiring ten jury trials, ten determinations of losses by ten different juries, and ten determinations of pro rata liabilities by different juries.

I conclude, therefore, that jurisdiction in equity exists; that it is established both in the federal and state courts in this jurisdiction that a bill in equity lies to determine whether the liability for loss exists, and, if so, the pro rata share of the respective insurers; that the gist of the action is the loss alleged to have occurred; that the same is in excess of the jurisdictional amount; that federal jurisdiction, therefore, exists, and, existing, it may not be frustrated by actions pending in the state court, but that same must be enjoined; that, independent jurisdiction in equity existing, the federal statute forbidding injunctions against state court proceedings does not apply, as otherwise to construe the act would frustrate and defeat equity jurisdiction.

Finally, defendant urges that plaintiffs are barred by laches. To determine this question we must look to the averments of the bill. There we find that all delay is alleged to have occurred, because plaintiffs relied upon the statement of the counsel for defendant that, if defendant should be convicted in the charge pending against him, the lawsuits would be dismissed. Indeed, plaintiffs rely upon this alleged breach of agreement in their prayer for relief in equity. On the face of the bill there is no laches.

A temporary injunction will issue as prayed, and the motion to dismiss will be denied.